Case 1:10-cv-10122-WGY    Document 34    Filed 04/15/13    Page 1 of 21

# United States Court of Appeals
## For the First Circuit

———————————

No. 11-2210

RICHARD ROSENTHAL,

Petitioner, Appellant,

v.

STEVE O'BRIEN,

Respondent, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

———————————

Before

Howard, Stahl and Lipez,
Circuit Judges.

———————————

John H. Cunha, Jr. for petitioner.
Annette C. Benedetto, Assistant Attorney General, Criminal
Bureau, with whom Martha Coakley, Attorney General of
Massachusetts, was on brief, for respondent.

———————————

April 15, 2013

———————————

**HOWARD, Circuit Judge**.    Richard Rosenthal appeals the denial of his 28 U.S.C. § 2254 petition.    His habeas petition, challenging his Massachusetts murder conviction, claimed that the state courts violated his constitutional rights in denying his motion for a new trial.    For the reasons given below, we affirm the district court's order.

## I.  Factual Background

The district court issued a forty-page memorandum and order denying Rosenthal's habeas petition.    Rosenthal v. O'Brien, 814 F. Supp. 2d 39 (D. Mass 2011).    This order ably recounts the history surrounding Rosenthal's murder conviction.    We summarize only the facts pertinent to this appeal.

On August 28, 1995, Rosenthal killed his wife by beating her in the face with a rock before cutting her open, removing her organs, and placing them on a stake in their backyard.    Later that evening, he told police that he had done a "terrible thing," which led to the discovery of her body and his arrest.

Rosenthal's arraignment occurred the next day in Framingham District Court.    At that time, Dr. Priscilla Hoffnung conducted an initial examination of Rosenthal to ascertain his mental competency.    She determined that Rosenthal had a knowledge of the legal system, including possible penalties, various court procedures, affirmative defenses, and the attorney-client relationship.    She also concluded, however, that "while appearing

-2-

generally competent, there were some observations that raised doubts," including his failure to grasp that his wife had died. Consequently, the arraigning judge ordered Rosenthal's commitment to Bridgewater State Hospital for a full competency evaluation pursuant to Massachusetts General Laws chapter 123, section 15(b). Dr. Joel Haycock attempted to perform this examination, but Rosenthal, acting under the advice of his attorney Norman Zalkind, declined to participate. Dr. Haycock offered the court no opinion as to Rosenthal's competency.

Although Rosenthal did not undergo a subsequent competency evaluation, he did speak with numerous mental health examiners. Reports by those professionals provided evidence of both Rosenthal's mental lucidity and some dysfunctional behavior. In follow-up examinations, Dr. Haycock reported that Rosenthal spoke in goal-directed sentences and displayed no evidence of major psychological symptomatology. Other doctors, however, noted increasing suicidality and bizarre, oppositional, and threatening behavior. In April 1996, Rosenthal was again committed to Bridgewater, where a Dr. DiCataldo evaluated him. Dr. DiCataldo considered Rosenthal's responses "well-measured and succinct . . . [and] devoid of spontaneity and elaboration," but he also found that Rosenthal was suspicious about the identity of his parents and other family members.

-3-

Rosenthal's attorneys also sought a medical opinion about Rosenthal's mental state to explore the possibility of an insanity defense.[1]    They retained Dr. Marc Whaley to carry out the examinations.    During the course of these evaluations, Zalkind raised concerns with Dr. Whaley about Rosenthal's competency after Rosenthal had exhibited unusual behavior at a court hearing.[2]    Dr. Whaley stated:

> However, the next time I met with Mr. Rosenthal [after learning of Zalkind's concerns], he appeared the same as he had been previously.  He was able to answer questions and interact with me in an appropriate fashion so I never performed the formal competency evaluation.  I did not specifically ask him about his understanding of the trial, the charges against him, or the function of the various roles of the courtroom participants, in that his mental functions at the time seemed to be grossly intact . . . .

The motion judge noted that Rosenthal's delusional and erratic behavior increased after he filed notice that he would assert a defense of lack of criminal responsibility.

The case proceeded to trial, about two weeks into which Rosenthal began growling and making other strange noises.  He also

---

[1] Massachusetts uses the Model Penal Code's definition of insanity, which asks whether, as a result of a mental disease or defect, the defendant "lacks substantial capacity either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law." Commonwealth v. McHoul, 226 N.E.2d 556, 558 (Mass. 1967) (quotations omitted).

[2] Rosenthal had attempted to apologize to the court for bringing on the air strikes in Bosnia.

informed Zalkind that he wished to testify.  Zalkind alerted the
court of this unusual behavior and asked for a short recess to
speak with his client.  After the recess, Zalkind informed the
court that Rosenthal would not testify and that Zalkind was
satisfied about his competency.  Zalkind did not want Rosenthal to
address the court at all -- not even regarding his waiver of the
right to testify -- and the court honored that wish.  The
prosecutor asked the court to inquire into Rosenthal's competency,
to which Zalkind responded:

> We feel satisfied that he's competent to stand
> trial.  I can't tell you anything more than
> that.  Sure, there's always some doubts when a
> man is as sick as he is, and he's a very sick
> man, and there are a lot of pressures that a
> trial brings out that you don't have in more
> regular times, but I wouldn't have gone
> forward trying this case unless I felt he was
> competent.  Am I a hundred percent sure?  No.
> I am not a hundred percent sure.  Do I think
> that he should be evaluated for competency?
> No.  I don't think it's in his best interest.

The court did not conduct a competency examination.

In his closing statement, Zalkind emphasized Rosenthal's
delusional understanding of reality to the jury in the following
terms:  "Ladies and gentlemen, again and again afterwards when
[Rosenthal] sees his brother and he sees his family he's
delusional. He doesn't think I'm me.  He asked Dr. Whaley for his
license ID.  He doesn't think his parents are his parents."  The
jury did not accept Rosenthal's insanity defense and convicted him
of first degree murder based on extreme atrocity or cruelty.

-5-

On plenary review, the Massachusetts Supreme Judicial
Court ("SJC") affirmed.  Commonwealth v. Rosenthal, 732 N.E.2d 278
(Mass. 2000).  Subsequently, Rosenthal brought three successive
motions for a new trial on grounds not raised in his direct appeal
pursuant to Rule 30(b) of the Massachusetts Rules of Criminal
Procedure.  The third motion, which superseded the previous two,
addressed four issues:  1) the trial court's failure to hold a
competency hearing sua sponte; 2) the trial court's failure to
inquire into Rosenthal's decision not to testify; 3) the trial
court's decision not to hold a hearing about the voluntariness of
his statements to police; and 4) ineffective assistance of trial
counsel.

The motion judge denied this motion for a new trial in a
31-page memorandum and order.  Mem. Decision & Order Def.'s Mot.
For New Trial, Commonwealth v. Rosenthal, No. 95–01775 (Mass.
Super. Ct. July 24, 2009).  This order addressed the four issues
raised in Rosenthal's third motion, as well as briefly mentioning
a previously abandoned claim of ineffective assistance of appellate
counsel.  Rosenthal then filed a motion to reconsider along with a
fourth motion for a new trial.  The motion judge denied the motion
to reconsider and did not rule on the fourth motion.  A single
"gatekeeper" SJC justice denied Rosenthal's petition for leave to
appeal.  See Mass. Gen. Law ch. 278, § 33E (barring further SJC

review unless a single justice finds that the appeal raises "new and substantial" questions of law).

Thereafter, Rosenthal initiated his habeas corpus petition, which challenged the following conclusions by the motion judge:  1) that the trial court did not need to hold a competency hearing <u>sua sponte</u>; 2) that trial counsel was not constitutionally deficient for not seeking a competency examination; 3) that the trial court did not need to inquire into Rosenthal's waiver of his right to testify; 4) that trial counsel was not constitutionally deficient for persuading Rosenthal not to testify; 5) that trial counsel was not constitutionally deficient for failing to suppress statements made to the police without a <u>Miranda</u> warning; and 6) that Rosenthal's appellate counsel was not constitutionally deficient for failing to raise certain issues on appeal.  The district court denied Rosenthal's petition, but certified all issues for appellate review.  All except the <u>Miranda</u> issue have been raised here.

## II. Discussion

A.        <u>Standard of Review</u>

"We review the district court's denial of habeas relief de novo."  <u>Yeboah-Sefah</u> v. <u>Ficco</u>, 556 F.3d 53, 65 (1st Cir. 2009) (quotations omitted).  In order to obtain habeas relief from state custody, a petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of,

-7-

clearly established Federal law, as determined by the Supreme
Court." 28 U.S.C. § 2254(d)(1). A state court's ruling is
contrary to federal law either when it adopts a rule that
"contradicts the governing law set forth in the Supreme Court's
cases" or when it reaches a different result from a Supreme Court
decision under "a set of facts that are materially
indistinguishable." John v. Russo, 561 F.3d 88, 96 (1st Cir.
2009). Even if the state court correctly identifies the law, it
may unreasonably apply the law to the facts of the case. To be
unreasonable, however, the application of federal law must be "more
than incorrect or erroneous." Yeboah-Sefah, 556 F.3d at 65 (citing
Williams v. Taylor, 529 U.S. 362, 411 (2000)). In other words,
"some increment of incorrectness beyond error is required." Morgan
v. Dickhaut, 677 F.3d 39, 47 (1st Cir. 2012) (quotations and
citations omitted). Finally, we only overturn state court factual
determinations that are unreasonable in light of the record. 28
U.S.C. § 2254(d)(2).

B.      Procedural Default

        Counsel for Massachusetts belatedly invokes procedural
default as a bar to Rosenthal's petition. A habeas claim is
procedurally defaulted where a state court has declined to review
the claim because of the petitioner's failure to comply with state
procedural requirements, providing an adequate and independent
state-law ground for denying relief. See Costa v. Hall, 673 F.3d

16, 23 (1st Cir. 2012).  Procedural default does not implicate our
jurisdiction.  Instead, it "is grounded in concerns of comity and
federalism."  <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 730 (1991)
(contrasting habeas review with direct appellate review of a state
court judgment).  Thus, a habeas respondent may waive the defense,
and we are not obligated to address it <u>sua sponte</u>.  See <u>Trest</u> v.
<u>Cain</u>, 522 U.S. 87, 89 (1997) ("procedural default is normally a
defense that the State is obligated to raise and preserv[e] if it
is not to lose the right to assert the defense thereafter.
(internal quotation marks omitted)).

        In this case, a defense of procedural default was freely
available to the Commonwealth.  In <u>Mendes</u> v. <u>Brady</u>, 656 F.3d 126
(1st Cir. 2011), we held that the gatekeeper provision of Section
33E constitutes an adequate and independent state procedural ground
for denying relief.  <u>Id.</u> at 129.  The SJC denied Rosenthal's
petition for appeal because he failed to raise any of the issues in
his motion for new trial on direct appeal.  However, the
Commonwealth did not invoke this defense in responding to
Rosenthal's habeas petition.  While its answer included a <u>pro forma</u>
reference to "adequate and independent" state grounds, the
Commonwealth concedes that it failed to present this defense to the
district court.  Instead, it asks us to exercise our discretionary
authority to address the issue <u>sua sponte</u>.  See, e.g., <u>Pike</u> v.
<u>Guarino</u>, 492 F.3d 61, 73 (1st Cir. 2007) ("We assume that, as a

-9-

matter of discretion, we may consider the Commonwealth's belated assertion of the defense of procedural default."); Brewster v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997) (noting that federal courts have the authority to consider procedural default sua sponte).

We choose not to do so. Our overriding concern when deciding whether to address procedural default is that "the interests of comity and federalism will be [best] served." Granberry v. Greer, 481 U.S. 129, 134 (1987). In this case, our review of the merits will not unnecessarily infringe on the Commonwealth's courts. Indeed, we affirm the motion judge's order as a reasonable interpretation of federal law. Thus, the risks of upsetting the state-federal balance are slight in this case. We therefore turn to the merits of Rosenthal's appeal.

C.        Claims Relating to Rosenthal's Competency

Rosenthal challenges the motion judge's rulings on two competency-related issues: 1) whether the trial court should have held a competency hearing sua sponte; and 2) whether Zalkind's decision not to seek a competency examination constituted ineffective assistance of counsel.

1.        Failure to Hold a Competency Hearing Sua Sponte

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." Medina v.

California, 505 U.S. 437, 439 (1992). Moreover, a court must hold a competency hearing <u>sua sponte</u> whenever there is "sufficient doubt" regarding the defendant's competence. <u>See</u> <u>Johnson</u> v. <u>Norton</u>, 249 F.3d 20, 26 (1st Cir. 2001). Rosenthal's appeal focuses on whether the motion judge's determination that the trial court's decision not to hold a competency hearing was reasonable.[3]

We agree with the district court that the motion judge's decision was neither contrary to, nor an unreasonable application of, federal law.[4] The motion judge, relying on the state case of <u>Commonwealth</u> v. <u>Hill</u>, 375 N.E.2d 1168 (Mass. 1978), correctly identified the controlling law. <u>See</u> <u>id.</u> at 1175 (holding that a court must hold a competency hearing where there is a "substantial question of possible doubt" (quotations omitted)); <u>cf.</u> <u>Johnson</u>, 249 F.3d at 26 n.4 (noting that courts have used many similar phrases "to describe the precise quantum of doubt necessary to prompt a competency hearing"). In applying that standard, "evidence of a

_____

[3] Rosenthal's reply brief challenges, for the first time, the trial court's finding of competency. Because he did not present this claim in his initial brief, we will not review it. <u>See</u> <u>United States</u> v. <u>Edgar</u>, 82 F.3d 499, 510 (1st Cir. 1996).

[4] A finding of competency is treated as a purely factual matter. <u>See</u> <u>Demosthenes</u> v. <u>Baal</u>, 495 U.S. 731, 735 (1990) (<u>per curiam</u>) (citing <u>Maggio</u> v. <u>Fulford</u>, 462 U.S. 111, 117 (1983) (<u>per curiam</u>)); <u>see also</u> <u>Companonio</u> v. <u>O'Brien</u>, 672 F.3d 101, 110 (1st Cir. 2012) (treating a state court's finding of competency as a factual matter). We review the decision not to hold a competency hearing, however, as either a legal question or a mixed question of law and fact under 28 U.S.C. § 2254(d)(1). <u>See</u> <u>Johnson</u> v. <u>Norton</u>, 249 F.3d 20, 25-26 (1st Cir. 2001).

-11-

defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required."  Drope v. Missouri, 420 U.S. 162, 180 (1975).

The motion judge had a broad array of evidence before her:  pre-trial mental examinations, Rosenthal's actions both in court and in confinement, the trial record, and post-trial affidavits and reports.  In evaluating this evidence, the motion judge focused on the legal requirements for competency -- that a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as a factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).  The pre-trial mental examinations and Zalkind's colloquies both demonstrate Rosenthal's understanding of the trial process.  The motion judge also gave weight to the trial court's decision not to hold a hearing because the trial judge had the opportunity to observe Rosenthal's behavior during the lengthy trial.  Similarly, neither Rosenthal's trial counsel nor his appellate counsel offered affidavits declaring that they believed Rosenthal was incompetent, which the motion judge found significant.  The evidence was not one-sided, but it was not unreasonable for the motion judge to conclude that it did not raise a substantial doubt regarding Rosenthal's competency.

On appeal, Rosenthal makes two arguments. First, he claims that the motion judge erred by ignoring post-trial reports of his mental illness. Rosenthal has not provided these reports on appeal. Therefore, we find it difficult to assess their relevance to the question of his competency at trial. Moreover, given the scope of the motion judge's review, it was reasonable for her to focus on evidence that the trial court could have considered. The motion judge was not determining whether Rosenthal was competent. Instead, she was only reviewing whether the trial court should have held a competency hearing. Thus, Rosenthal needed to show that "objective facts known to the trial court were sufficient to raise a bona fide doubt." Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (internal quotation marks omitted) (emphasis added). While post-trial mental reports and affidavits, especially those close in time to the trial, have value in assessing Rosenthal's competency at trial, they are of limited value in answering whether the evidence before the trial judge required him to hold a competency hearing sua sponte.

Rosenthal also claims that the facts of his conviction are materially indistinguishable from those in Drope, in which the Supreme Court held that a trial court's failure to hold a competency hearing denied the defendant his due process rights. Drope, 420 U.S. at 179-80. In that case, however, the defendant's attorney had requested a competency hearing at the outset of the

-13-

trial and then twice moved for a mistrial after Drope was
hospitalized following a suicide attempt.  Id. at 164-67.  By
contrast, Zalkind considered Rosenthal competent to stand trial and
at no time requested that the court examine Rosenthal's competency.
These differences foreclose Rosenthal's claim that the facts of the
two cases are materially indistinguishable.

    2.    Ineffective Assistance of Trial Counsel

A defendant is denied his Sixth Amendment right to
effective counsel where the trial counsel's performance is
deficient and results in prejudice to the defendant.  See
Companonio v. O'Brien, 672 F.3d 101, 110 (1st Cir. 2012) (citing
Harrington v. Richter, 131 S. Ct. 770, 787 (2011)).  An attorney's
performance is deficient when it falls below "an objective standard
of reasonableness."  Strickland v. Washington, 466 U.S. 668, 688
(1984).  We "indulge a strong presumption" that an attorney's
decisions "might be considered sound trial strategy."  Id. at 689
(quotations omitted).

Nonetheless, counsel may not strategically ignore the
question of competency.  Instead, if "there are substantial
indications that the defendant is not competent to stand trial,"
the need to seek a competency hearing is a "settled obligation."
Robidoux v. O'Brien, 643 F.3d 334, 338 (1st Cir. 2011).  Thus, if
Rosenthal's counsel harbored substantial doubts regarding
competency, he had a duty to seek a competency hearing.  The motion

judge, however, reasonably concluded that Zalkind had no
substantial reason to doubt Rosenthal's competency.

As the judge noted, Zalkind was clearly attuned to the
possibility of incompetency throughout his representation. After
Rosenthal attempted to offer an irrational statement in court,
Zalkind raised the issue of competency with Dr. Whaley. Although
Dr. Whaley did not conduct a formal competency examination, his
subsequent report indicated that Rosenthal could satisfactorily
participate in his own defense. Moreover, midway through
Rosenthal's trial, Zalkind requested the opportunity to speak with
his client regarding his competency, as a result of his bizarre
behavior that day. Rather than ignore or conceal Rosenthal's
possible incompetency, Zalkind immediately sought to investigate
the matter at greater length. After speaking with his client,
Zalkind informed the trial court that he was satisfied about
competency. He admitted that he was not "one hundred percent sure"
of Rosenthal's competency but stated that he would not have tried
the case if he believed that his client was incompetent. Zalkind
showed awareness of the issue at several stages of the proceedings
and reassured the trial court that he believed Rosenthal was
competent. Moreover, his honest expression of doubt is not enough
to render the motion judge's determination unreasonable. Zalkind
was only obligated to request a competency hearing if the
indications were substantial. The motion judge could have

-15-

interpreted his statement -- "there's always some doubts when a man is as sick as he is" -- as articulating doubts below that standard.

Rosenthal makes much of Zalkind's closing arguments -- especially the statement "[Rosenthal] doesn't think I'm me" -- to show that Zalkind should have doubted Rosenthal's "ability to consult with his lawyer with a reasonable degree of rational understanding." Dusky, 362 U.S. at 402. He claims that an inability to identify his attorney made it impossible, or at least highly unlikely, that he could consult with his attorney in a meaningful way. While Rosenthal's delusions regarding the identity of others, particularly his attorney, are relevant to his competency to stand trial, Zalkind's statement is but one piece in a mosaic of evidence regarding Rosenthal's mental state. It is not sufficient to render the motion judge's decision unreasonable where ample evidence indicated that Rosenthal could consult with his attorneys and follow their advice.

The motion judge also reasonably determined that Zalkind was not deficient for advising his client against participating in competency examinations on two occasions: first, when Dr. Haycock attempted to evaluate Rosenthal's competency pursuant to the arraigning judge's order; second, at trial when Zalkind requested that the court not inquire into Rosenthal's capacity. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."

<u>Strickland</u>, 466 U.S. at 690.  The evidence demonstrates Zalkind's
awareness of the facts bearing on Rosenthal's competency.
Moreover, Zalkind correctly believed that a competency hearing
could be used against Rosenthal on the issue of his mental
condition in a future trial.  <u>See</u> Mass. Gen. Laws ch. 233, § 23B.
Zalkind had a firm understanding of the relevant law and facts on
this issue.  Thus, the motion judge reasonably deferred to his
strategic decision to forego a competency evaluation.

D.      <u>Claims Relating to Rosenthal's Waiver of the Right to
        Testify</u>

        Rosenthal claims that both the trial court and his trial
counsel abridged his right to testify in his own behalf, and he
challenges the motion judge's contrary conclusion.  We see nothing
unreasonable about the motion judge's determination.

        A criminal defendant has a constitutional right to
testify in his own defense.  <u>See</u> <u>Rock</u> v. <u>Arkansas</u>, 483 U.S. 44, 50-
52 (1987).  Counsel, acting alone, cannot waive this right on
behalf of the defendant.  <u>Owens</u> v. <u>United States</u>, 483 F.3d 48, 58
(1st Cir. 2007) (citing <u>United States</u> v. <u>Mullins</u>, 315 F.3d 449, 454
(5th Cir. 2002)).  Moreover, silence alone does not imply a waiver;
there must be "something in the record suggesting a knowing
waiver."  <u>Chang</u> v. <u>United States</u>, 250 F.3d 79, 84 (2d Cir. 2001).
The responsibility to inform a defendant of this right rests with
his lawyer, and a trial court need not apprise the defendant nor

-17-

make an independent inquiry into the waiver.  See Owens, 483 F.3d
at 58; Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987).

      1.     Trial Court's Failure to Inquire into Waiver

      The motion judge reasonably concluded that the trial
court did not need to inquire into Rosenthal's waiver of his right
to testify.  In this case, the trial court gave Zalkind a short
recess to determine whether Rosenthal would testify and it accepted
Zalkind's assertion that Rosenthal waived that right.  It had no
obligation to ensure the validity of that assertion.  Owens, 483
F.3d at 58.  Moreover, it had no reason to suspect that Rosenthal's
waiver was involuntary, unknowing or coerced.  See United States v.
Sys. Architects, Inc., 757 F.2d 373, 375-76 (1st Cir. 1985)
(holding that no inquiry was necessary where the record contained
no facts that "would alert the court to a disagreement between
attorney and clients regarding whether they should take the
stand").  Therefore, Rosenthal's claim that the trial court needed
to inquire into the validity of his waiver fails.

      2.     Ineffective Assistance of Counsel

      Rosenthal presents two theories of how Zalkind
unconstitutionally denied him his right to testify.  First,
Rosenthal argues that Zalkind coerced him into waiving his right to
testify.  In an affidavit that he presented to the motion judge,
Rosenthal claims that, during the recess, Zalkind threatened to
keep him in a holding cell unless he agreed not to testify.  The

-18-

motion judge did not accept this account.  Absent any other
evidence corroborating this narrative, the motion judge reasonably
discredited Rosenthal's account, and we will defer to her factual
findings.

Rosenthal's other argument is no more than a second
attempt to litigate his competency claim.  Rosenthal contends that
substantial doubts regarding his competency made it impossible for
him to waive his right to testify knowingly, and that Zalkind
should have recognized this problem.  Our prior analysis of
Rosenthal's competency claims shuts the door on this line of
reasoning.

We do not see how Zalkind deprived Rosenthal of his right
to testify.  If anything, by bringing the matter to the attention
of the court, Zalkind decreased the likelihood of involuntary
waiver.  See Chang, 250 F.3d at 84 ("[S]ilence alone cannot support
the inference of [a knowing] waiver.").  He requested a recess to
discuss Rosenthal's request to testify and then informed the trial
court that Rosenthal would not testify.  Zalkind's ability to
persuade Rosenthal not to testify was not a violation of
Rosenthal's rights; counsel was instead fulfilling his obligation
to pursue what he considered the best trial strategy.  See
Siciliano, 834 F.2d at 31 (concluding that a defendant's strategic
decision not to testify, "at the strong urging of counsel," was not
a constitutional violation).

-19-

E.        Ineffective Assistance of Appellate Counsel

         Although Rosenthal had raised the issue of ineffective
appellate counsel in his second motion for a new trial, he dropped
the issue from his third motion.  Consequently, the motion judge
only made passing reference to this particular claim in the order.
Rosenthal then filed a motion for reconsideration, in which he
asked the motion judge to resolve the issue of ineffective
appellate counsel definitively.   The motion judge denied the
motion.

         Before the district court, on this issue the Commonwealth
argued that Rosenthal failed to exhaust his state remedies as
required by 28 U.S.C. § 2254(b)(1)(A).  A petitioner has exhausted
state remedies when his claim is "fairly present[ed]" to the state
courts.  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  The district
court determined that Rosenthal had fairly presented his claim of
ineffective appellate counsel, relying on the cases of Gagne v.
Fair, 385 F.2d 4, 7 (1st Cir. 1987) (holding that a claim is fairly
presented when, inter alia, the state court is likely alerted to
the claim's federal nature), and Nadworny v. Fair, 872 F.2d 1093,
1099-1100 (1st Cir. 1989) (holding that a claim is fairly presented
when a state law assertion is functionally identical to a federal
claim).  The district court reasoned that the claim of ineffective
appellate counsel was merely a variation of Rosenthal's ineffective
assistance of trial counsel claim.  Moreover, the district court

took note of the motion judge's statement that Rosenthal "was represented by competent experienced counsel at trial and on appeal," which indicated that Rosenthal had adequately alerted the court to this issue.

The district court then proceeded to resolve the claim on the merits. It held that Rosenthal had not shown ineffective assistance of appellate counsel for failing to raise the issues of competency, waiver of his right to testify, and ineffective assistance of trial counsel on appeal. It further held that Rosenthal was not prejudiced by his appellate counsel's decision, because none of these possible arguments were meritorious. On appeal, the Commonwealth, while maintaining Rosenthal's failure to exhaust state remedies, has conceded that "the goal of judicial economy may better be served if the merits of the claim are addressed."

We agree. The district court's order dealt with this issue comprehensively. On de novo review, we adopt its legal analysis and have nothing to add. Rosenthal's claim of ineffective assistance of appellate counsel fails.

### III. Conclusion

For the foregoing reasons, we **affirm** the district court's order.

-21-